SILVER REED AMERICA, INC. AND SILVER SEIKO, LTD., PLAINTIFFS *v.* UNITED STATES, DEFENDANT, CONSUMER PRODUCTS DIVISION, SCM CORP., INTERVENOR

Court No. 80–6–00934

Before BERNARD NEWMAN, *Senior Judge.*

(Decided May 1, 1985)

*Wald, Harkrader & Ross (Christopher Dunn* and *William J. Clinton, Esqs.,* of counsel) for plaintiffs.
*Richard K. Willard,* Acting Assistant Attorney General, *David M. Cohen,* Director, Commercial Litigation Branch, *Velta A. Melnbrencis, Esq.* for defendant.
*Stewart and Stewart (Eugene L. Stewart* and *Terence P. Stewart, Esqs.,* Special Counsel) for intervenor.

NEWMAN, *Senior Judge:* This antidumping case, covering portable electric typewriters ("PETs") from Japan, is before the Court on remand from the Court of Appeals for the Federal Circuit for further proceedings. *Consumer Products Division, SCM Corporation (United States, Party-In-Interest)* v. *Silver Reed America, Inc. and Silver Seiko, Ltd.,* CAFC Appeal No. 84–1118 (January 28, 1985). In an interlocutory appeal, our Appel- late Court sustained the validity of the exporter's sales price offset limitation prescribed by 19 CFR § 353.15(c) ("ESP offset cap"), reversing this Court's decision of February 1, 1984. 7 CIT 23, Slip Op. 84–8 (1984).

Defendant has moved for vacatur of that part of Slip Op. 84–8 which remanded this case to the Department of Commerce, International Trade Administration (ITA), for redetermination of foreign market value without regard to the ESP offset cap, and for reconsideration of plaintiffs' claim for a level of trade adjustment. By order of March 9, 1984, this Court stayed the remand to ITA pending the interlocutory appeal respecting the ESP offset cap issue, which stay was extended by order dated March 15, 1985 for a period of thirty days following this Court's disposition of defendant's motion for vacatur and entry of final judgment.

Defendant's motion for vacatur is predicated upon the grounds that intervening circumstances have rendered the remand unnecessary and that unless the remand is vacated, this Court will be required to issue an advisory opinion, contrary to Article III of the Constitution.

Specifically, defendant maintains that the Appellate Court's decision in the interlocutory appeal in this case requires vacatur of this Court's remand to ITA with regard to the ESP offset cap. Plaintiffs have not opposed vacatur of this aspect of the remand. Additionally, however, defendant seeks vacatur of the remand to ITA for reconsideration of plaintiffs' claim for a level of trade adjustment.

Defendant maintains that remand to ITA for reconsideration of plantiffs' claim for a level of trade adjustment is no longer necessary because: (1) Plaintiffs' claim, even if allowed upon remand, would not eliminate the dumping margins found in the final affirmative less than fair value (LTFV) determination, and therefor such determination and antidumping order are valid; (2) a reconsideration of the claimed level of trade adjustment could, at most, lead to a finding that the dumping margins as found in the LTFV investigation were too high, but such a finding would have no practical effect since the margins found in the LTFV determination were, and will not, be used as the basis for duty assessment; and (3) neither the dumping margins as originally determined in the LTFV investigation nor those recalculated on remand in this case, can serve as the basis for cash deposits of estimated duties with regard to plaintiffs' PETs because of subsequently published administrative review determinations.

In short, defendant posits that any recalculation of dumping margins determined in the final LTFV investigation would have no prospective effect with regard to either actual antidumping duty assessments for plaintiffs' PETs of the cash deposit rate for estimated duties, and therefore any decision of this Court respecting ITA's action on remand would, in effect, be merely an advisory opinion.

In opposition to vacatur respecting their claimed level of trade adjustment, plaintiffs contend that a final decision on remand in this case would indeed have prospective effect on plaintiffs' entries of PETs because of the preliminary injunction issued by this Court on June 21, 1984 (7 CIT 368, Slip Op. 84–72 (1984)). There, this Court enjoined, pending final disposition of this case, liquidation of plaintiffs' entries of PETs from Japan, expressly including the entries covered by the "early determination", which was challenged in *Brother Industries, Ltd.* v. *United States,* 3 CIT 126, 540 F. Supp. 1341 (1982), *aff'd. sub nom. Smith-Corona Group* v. *United States,* 713 F. 2d 1568 (Fed. Cir. 1983), *cert. denied,* 104 S. Ct. 1274 (1984).[1]

Plaintiffs advance the argument that since this Court held in Slip Op. 84–72 the liquidation of plaintiffs' entries "should be subject to the final decision by the Court of Appeals or this Court in the present action" (Slip Op. 84–72 at 10–11), the final decision in this case is conclusive with respect to the liquidation of all plaintiffs' unliquidat-

---

[1] The Commerce Department's early determination covers entries from January 4 to May 7, 1980. January 4, 1980 was the date on which the Treasury Department issued its tentative determination of sales at less than fair value and suspended liquidation of entries. 45 Fed. Reg. 1220. May 7, 1980 was the date of publication by the International Trade Commission of its affirmative final injury determination. 45 Fed. Reg. 30188.

ed entries. Specifically, plaintiffs contend that a final decision in the case after remand (1) would decide plaintiffs' liability for antidumping duties respecting the early determination entries; (2) would be binding on ITA in a remand in Consol. Court No. 83–10–01522, covering subsequent entries;[2] and (3) would govern estimated duty deposits on future entries of plaintiffs' PETs.

The Court concludes that notwithstanding plaintiffs' seemingly logical contention, defendant's position is correct, and consequently the remand to ITA must be vacated.

At this juncture, it is important to note that in this action plaintiffs have challenged the LTFV determination, but that determination did not constitute the basis for actual duty assessment, either with respect to past entries (the liquidation of which was suspended after publication of ITA's preliminary affirmative LTFV determination) or subsequent entries. Following an antidumping order, actual duty assessment is based upon an administrative review, either an "early determination" under 19 U.S.C. 1673e(c) or periodic review determination pursuant to 19 U.S.C. § 1675(a). The results of such administrative reviews serve as the basis for actual duty assessment with regard to the entries covered by the particular determination and as the basis for cash deposits of estimated duties for future entries. ITA's administrative review determinations are subject to judicial review. 19 U.S.C. § 1516a(a)(2). Unless liquidation is enjoined by the Court, entries covered by ITA's determination are to be liquidated in accordance with the determination if they are entered, or withdrawn from warehouse, for consumption on or before the publication date of a notice of a decision of this Court or of the Court of Appeals for the Federal Circuit, not in harmony with that determination. 19 U.S.C. § 1516a(c). If the Court enjoins the liquidation of entries covered by a determination, then the entries, the liquidation of which was enjoined, are to be liquidated in accordance with the final Court decision in the action. 19 U.S.C. § 1516a(e). However, the fact that liquidation of entries is enjoined by the Court in an action challenging an affirmative LTFV determination, as in the present case, does not mean that the administrative record in the LTFV investigation is the basis for determining the actual amounts of antidumping duties due upon entries covered by subsequent administrative review determinations.

The foregoing conclusion is compelled by an analysis of the entire statutory scheme for administrative and judicial review, including the provisions contained in 19 U.S.C. § 1673e(c), 1675(a) and 1516a(a)(2) (A) and (B). As recently observed by our Court of Appeals in *Freeport Minerals Company* v. *United States,* CAFC Appeal No. 84–1086 (April 3, 1985):

---

[2] The level of trade issue has been raised by plaintiffs in this action challenging an administrative review of the antidumping order.

&ast; &ast; &ast; Certainly neither ITA nor the courts are free to abandon the statutory framework when a case is remanded. Congress has granted the lower court broad powers of relief, including authority to issue "orders of remand," [footnote omitted] but nowhere has it granted that court authority to assume control of an agency case, once that case has come to it for judicial review, and retain control over it regardless of the statutes which the agency must follow. [Footnote omitted.]

Hence, under the statutory framework applicable here, judicial review must be based upon the administrative record of the particular proceeding resulting in the challenged determination.

It must be stressed, however, that the Court's rulings on questions of law in the review of a final determination have precedential effect in subsequent cases involving an issue previously decided. In Slip Op. 84–8 this Court held that ITA erred in denying plaintiffs' claim for an adjustment to foreign market value for differences in circumstances of sale predicated upon the difference in the levels of trade to which Silver sold PETs in the home market and in the United States market. It appears that ITA found plaintiffs' claimed level of trade adjustment unwarranted on the basis that in both the home and United States markets sales were made to "large wholesale quantity customers" (45 Fed. Reg. 18418); and that ITA disregarded plaintiffs' evidence respecting the extra expenses involved in home market sales to retailers as opposed to United States sales to wholesalers. Plainly, in responding to plaintiffs' claimed level of trade adjustment, ITA misconstrued the antidumping law in that the agency ignored the distinction between an adjustment related to differences in quantities sold and an adjustment predicated upon "other differences in circumstances of sale", viz., level of trade. After this Court held that the quantities sold in the two markets compared were not dispositive of whether or not a level of trade adjustment should have been granted, the action was remanded to ITA (1) to determine whether the expense data submitted by Silver satisfactorily supports a finding that the different levels of trade in the home market and in the United States affected price comparability; and (2) to determine whether Silver adequately quantified its claimed adjustment predicated upon its proof of higher expenses in selling to retailers in the home market rather than to wholesalers. From the foregoing directives it is evident that the remand contemplated specific factual findings by ITA that would justify either the allowance or disallowance of the claimed adjustment following the proper legal criterion. However, such factual findings on remand and recalculation of dumping margins, relating to the time period and entries embraced by the final LTFV determination, would have no prospectively binding effect in subsequent administrative reviews involving the level of trade issue.

Plaintiffs' argument that because liquidation of its entries was enjoined, it follows that ITA's action on remand (and this Court's

review thereof) would have a prospective effect on the actual duty assessment rates and estimated duty deposit rates established in the "early determination" (and subsequent administrative reviews) envisions a broader scope of the present action and the preliminary injunction than is contemplated by law or by this Court's decision in Slip Op. 84–72. As previously noted, any factual findings in the present case on remand to ITA regarding the level of trade issue, and the Court's review thereof, could not have prospective application because that issue must be resolved on the basis of the record before ITA in the particular review proceeding. To reiterate, with respect to matters of law, the Court's decision in Slip Op. 84–8 has precedential effect in cases involving the level of trade issue in subsequent administrative reviews. However, the amount of the actual antidumping duties to be assessed and cash deposits for estimated duties to be collected upon specific entries must be based upon the facts adduced in the administrative review covering those particular entries.

Finally, the Court agrees with defendant's assertion that in enjoining liquidation of plaintiffs' entires in Slip Op. 84–72 this Court did not hold that it would thereby review plaintiffs' level of trade claim in the present case with respect to the early determination entries or with respect to the entries covered by Consol. Court No. 83–10–01522. The preliminary injunction expressly sought to preserve the effect of the final decision in this case respecting the ESP offset cap, which this Court held invalid. As this Court commented, "[i]f this Court's decision invalidating the ESP offset cap is upheld on appeal, *there may be no margins of dumping respecting any of Silver's entries";* and "to bar the equitable relief sought by plaintiffs respecting the early determination entries, as urged by defendant, would permit the Customs Service to liquidate such entries in utter disregard of the final decision in the present case, resulting in the assessment of antidumping duties, *whether or not there were any margins of dumping in connection with these entries"* *(Slip Op. 84–72 at 11 and 13)* (emphasis added). Plaintiffs do not dispute defendant's contention that even if ITA allowed plaintiffs' claimed level of trade adjustment in full, significant margins of dumping would still exist and the LTFV determination and antidumping order would remain valid.

In light of the foregoing, it is hereby ORDERED:

(1) defendant's motion for vacatur of that part of this Court's decision on February 1, 1984 in Slip Op. 84–8 which remands this case to ITA and for entry of final judgment is granted:

(2) the final affirmative LTFV determination respecting PETs from Japan manufactured by Silver Seiko, Ltd. is valid.

Judgment will be entered accordingly.